## THE STATE v. EDDIE ADKINS, Appellant.

### Division Two, December 1, 1920.

1. **INFORMATION:** Omission of Word "The". The mere omission of the word "the" before "State" in the clause "against the peace and dignity of the State," with which the Constitution requires all indictments and informations to conclude, does not deprive a defendant of a substantial right, and does not constitute reversible error. [Overruling State v. Lopez, 19 Mo. 255; State v. Pemberton, 30 Mo. 376; State v. Stacy, 103 Mo. 11; State v. Campbell, 210 Mo. 202; State v. Skillman, 209 Mo. 408; State v. Warner, 220 Mo. 23, and all other decisions which follow their holdings on the point.]

2. ———: ———: Constitution: Literal Interpretation: Its Own Interpreter. A literal compliance with the words of the Constitution,

State v. Adkins.

even in criminal cases, is not required. It is a fundamental rule of construction of all writings, whether they be laws, wills, deeds, contracts or constitutions, that they must be construed as a whole, and not in detached fragments; that they must be construed to effectuate, and not to destroy, their plain intent and purpose; and that in determining what is that intent and purpose all provisions relating either generally or specially to a particular topic are to be scrutinized and interpreted. The purpose and intent of the Missouri Constitution are to promote the general welfare of the people and to give security to life, liberty and property, to afford certain remedy for every injury to person, property or character, and to guarantee that right and justice shall be administered without sale, .denial or delay; and those great purposes declared in the Bill of Rights are to be held in view in determining whether the omission of the final "the" in the other subordinate constitutional clause declaring that all indictments and informations shall conclude with the words "against the peace and dignity of the State," is a fatal omission, and when that is done the conclusion is compelled that such omission does not deprive accused of a substantial right, but that only a substantial compliance with said clause is all that is either required or necessary.

3. INSTRUCTION: Comment on Evidence: Singling Out Detached Portions. When the automobile, in which defendant, deceased and others were riding, stopped at a bridge, defendant got out, and as the car was about to start deceased jumped out, ran back to defendant and began to fight him, and during the fight deceased got the fingers of defendant in his mouth and badly lacerated them. A half hour or so later, deceased hunted up defendant where he was concealed in a corn-field, began to throw bricks at him, and was shot and killed. Held, that an instruction for the State, in which the jury were told that if they believed from the evidence that "the deceased bit the fingers of defendant" in the fight near the bridge "such biting did not give defendant a right subsequently to assault deceased with a loaded shot-gun or to shoot him," not only singled out the altercation at the bridge and told the jury the legal effect of such isolated portion of the evidence, but was in contravention of the statute which forbids the court to "sum up or comment on the evidence," and was reversible error.

Appeal from Carroll Circuit Court.—*Hon. Ralph Hughes,* Judge.


REVERSED AND REMANDED.

*James F. Graham* and *Franken & Timmons* for appellant.

(1)    The second amended information upon which defendant was tried and found guilty is fatally defective. It concludes with the words, "against the peace and dignity of State." The omission of the word "the" before the word "State" in said conclusion makes the information fatally defective. Mo. Constitution, art. 6, sec. 38; State v. Skillman, 209 Mo. 408; State v. Campbell, 210 Mo. 202; State v. Warner, 220 Mo. 203. (2)    The court erred in giving, over the objections and exceptions of defendant, Instruction 10. This instruction is an unwarranted comment on the evidence and singles out certain facts to the exclusion of others. Such an instruction is erroneous. Sec. 5244, R. S. 1909; State v. Reed, 137 Mo. 139; State v. Rutherford, 152 Mo. 124 153; State v. Wortz, 191 Mo. 569; State v. Mitchell, 229 Mo. 697; State v. Holmes, 239 Mo. 472; State v. Shaffer, 253 Mo. 337; State v. Rogers, 253 Mo. 412; State v. Dixon, 190 S. W. 294; State v. Fish, 195 S. W. 998; State v. Smith, 53 Mo. 271; State v. Driscoll, 235 Mo. 385.

*Frank W. McAllister,* Attorney-General, and *Henry B. Hunt,* Assistant Attorney-General, for respondent.

(1)    An examination of the information discloses that, if the authorities are to be followed, it is defective because the article "the" is omitted before the word "State" in the concluding clause. Section 38, art. 6, Mo. Constitution; State v. Warner, 220 Mo. 23; State v. Skillman, 209 Mo. 412; State v. Campbell, 210 Mo. 215. (a) At the common law great particularity was required in the concluding clause of an indictment. 2 Hale P. C. 188; 1 Chitty, Cr. L. 247; 2 Hawkins' P. C. 345, 346; Damon's Case, 6 Me. 152; 2 Bish. New Crim. Proc. sec. 649. (b) At the common law, no council was allowed the prisoner upon his trial, upon the general issue

in any capital crime, unless some point of law arose proper to be debated; and no person accused of a capital crime was suffered to exculpate himself by the testimony of any witnesses. 4 Lewis's Blackstone, 1740, 1744, secs. 355, 359. (2) A substantial compliance with Section 38, Article VI, of the Constitution, is sufficient. 22 Cyc. 243-b; 2 Bish. New Crim. Proc. secs. 651-(4), 652a; State v. Campbell, 210 Mo. 216; State v. Waters, 1 Mo. App. 9; 22 Cyc. 291; Sec. 5115, R. S. 1909. (a) The sufficiency of an information must be judged from the information as a whole, and not from solated parts thereof. State v. Griffin, 249 Mo. 628.

(3) Instruction 10 is not erroneous by reason of the fact that it comments on the evidence. 21 Cyc. 1033; State v. Seal, 47 Mo. App. 608; Gharst v. Transit Co., 115 Mo. App. 412; Leeser v. Boeckhoff, 33 Mo. App. 238; State v. Birks, 199 Mo. 275; State v. Hale, 238 Mo. 509; State v. Hudspeth, 159 Mo. 197, 208; Lowe v. State, 201 S. W. (Tex.) 987; State v. Inich, 173 Pac. (Mont.) 233; State v. Wilson, 250 Mo. 329.

*Frank E. Atwood* and *Lozier & Morris* for respondent.

Having assisted the State in the trial of this cause, we desire to present one proposition to the court. That proposition is whether the omission of the word "the" before the word "State" in the concluding part of the second information renders said information a nullity. We are aware that this court has expressly decided that such an omission is fatal, in the three cases cited by defendant's counsel. However, we respectfully insist that the reasoning employed in those cases is not sound, and that those decisions are out of harmony with the spirit of our State Constitution and is a departure from the previous decisions of this court in construing Section 38 of Article VI and similar questions arising out of similar constitutional and statutory provisions. Believing that the doctrine as announced in those cases is

contrary to the spirit and purpose of all of our laws and is based solely on an extreme technicality, we deem it our duty respectfully to ask the court to reexamine those cases and to make a new pronouncement in keeping with what we consider the spirit and purpose of our constitutional and statutory laws relating to trials by indictment or information.

RAILEY, C.—Defendant was charged by information with murder in the first degree for shooting, with a shotgun, and killing, Clete Bachtel, in Carroll County, Missouri, on June 29, 1918. The information was filed September 14, 1919. It is in the usual form, charging defendant with murder in the first degree, except as to the conclusion, which reads as follows: "did kill and murder, against the peace and dignity of State." On October 6, 1919, defendant waived a formal arraignment and entered his plea of not guilty. On October 9, 1919, the jury returned into court the following verdict:

"We, the jury, find the defendant guilty of murder in the second degree and assess his punishment at imprisonment in the penitentiary for ten years."

The facts, as disclosed by the record, are substantially as follows:

Defendant, with his father and brother, and deceased, Clete Bachtel, hired a public auto livery at Carrollton, Missouri, driven by one Otte Steele, to take them to Alma, Missouri, which is across the river from Carrollton, in Saline County, Missouri. They left Carrollton between ten and eleven o'clock on the morning of June 29, 1918, crossed the river at Waverly, and arrived at Alma about noon. There they drank a few rounds of beer. The defendant and his father each purchased a pint of whiskey. The party remained in Alma about twenty minutes and started back to Carrollton. Shortly after getting back on the Carroll County side, deceased began trying to start a fight with defendant Adkins. He had the driver stop the car and invited defendant out to

,fight him.  Appellant refused to do so at the time, telling deceased that he wanted no trouble with him.  Deceased then got back in the car and began to abuse defendant.  As the party neared Carrollton, defendant instructed Steele to let him out of the automobile at the north end of what is known as the wire bridge, the same being a long bridge across the Wakenda Drainage District ditch, just southwest of Carrollton.  Steele stopped the ,car at the north end of the bridge, as instructed; defendant got out of the car and started home across the bridge, taking with him his pint of whiskey.  Deceased had been drinking after leaving Alma, was considerably under the influence of liquor, and, as the car started, after its stop at the bridge, jumped out of the car, ran back to defendant, and began to fight him.  During the fight, deceased got the fingers of defendant in his mouth and badly lacerated them.  In order to compel deceased to release his fingers, defendant cut him twice on the arm.  The brother of defendant separated them, and persuaded deceased to go with him toward Carrollton.  Deceased and defendant's brother started north.  Deceased said to defendant when leaving the latter, that he would get defendant before night, or that he would get even with him for cutting him.  After Pete Adkins and deceased started toward Carrollton, deceased picked up three or four bricks, and said he was going back down there to get even with defendant.  Finally Pete persuaded him to throw the bricks down and go with him towards the home of defendant's father.  Afterwards, deceased saw Winfrey and Underback near the Santa Fe depot, south of said bridge.  He wanted them to take him to the wire bridge.  He said he wanted to settle the fight that he and Adkins had had.

In the meantime, defendant stopped near the wire bridge, talking with Reed and Plaster, who had hitched their horse, with a spring wagon attached, to the south end of the bridge.  They had talked there, perhaps a half hour, when Reed looked to the south and saw Bachtel

coming down the road toward them. Reed told defendant, he had better make it, as Bachtel was coming for trouble. Reed and Plaster were going squirrel-hunting, and had two shotguns in the wagon. As they were starting south in the wagon, defendant stepped to the rear of the wagon and got a single-barreled shotgun. He went east through a large gap, into a corn-field, in which corn was growing about knee-high, and went behind a clump of bushes about 150 feet east of the bridge. Reed and Plaster continued south on the road, and passed Bachtel. The latter had in his shirt bosom a protruding object, and did not speak to Reed or Plaster as he passed them, but continued north toward defendant. Bachtel passed the gap, through which the defendant passed into the corn-field, walked upon the bridge, looked around, came quickly back and walked through the gap directly toward defendant. The latter stepped from behind the bushes, leveled the gun on deceased and told him to stop. Deceased kept coming, and threw two pieces of rock or brick at defendant, then thrust his hands toward the protruding object in his shirt, at which time, defendant fired and killed deceased with said gun.

The evidence disclosed that deceased, when under the influence of liquor, had the reputation of being a dangerous and turbulent man.

An examination of the deceased's body indicated that death was caused from shotgun wounds in the face and forehead, some of the shot penetrating the brain.

Elaborate instructions were given by the court, which will be considered, with other matters, as far as necessary, in the opinion.

After defendant was sentenced, he was permitted by the court to prosecute his appeal to this court as a poor person.

I. Appellant is asking, that this cause be reversed and remanded upon two grounds, which are fully argued in the respective briefs of counsel. First. It is contended that the information is invalid, because it con-

Information. cludes as follows: "against the peace and dignity of State," the definite article "the," immediately preceding "State," being omitted. Appellant insists that said information fails to comply with Section 38 of Article VI of our Constitution, in respect to above matter, and, hence, it necessitates the reversal and remanding of the cause. Second. It is contended, that instruction numbered 10, given by the court, is fatally defective, in this, that it is an unwarranted comment on part of the evidence relied on by defendant as a defense, and should not have been given, We will dispose of above questions in the reverse order, for the obvious reason that, if the cause has to be reversed and remanded on account of the giving of said instruction, it will not be necessary to pass upon the first proposition, supra, as the prosecuting attorney can eliminate said question from the case by filing an amended information,

II. Instruction numbered ten complained of by appellant, reads as follows:

"Although you may believe from the evidence that the deceased bit the fingers of defendant in the altercation or combat testified to between the defendant and the deceased at or near the north end of the bridge, yet such biting of the fingers of the defendant did not give the defendant a right subsequently to assault deceased with a loaded shot-gun or to shoot him."

Section 5244, Revised Statutes 1909, provides, that:

"The court shall not, on the trial of the issue in any criminal case, sum up or comment upon the evidence."

Defendant claimed before the jury, that he shot deceased in self-defense. In passing upon his conduct at that time, it was the province of the jury alone to determine from the evidence whether appellant had reasonable cause, from what had formerly occurred and what took place at the time of the shooting, for believing that deceased would do him bodily harm, unless he de-

fended himself by shooting, as he did.  The fight at the north end of the bridge, was one of deceased's own chosing, in which he was the aggressor, and during which he had bitten defendant's fingers.  It was a question for the jury, and not the court, as to whether defendant shot deceased thereafter through revenge, on account of the latter's act in biting his fingers, or whether, in good faith, defendant had good reason for believing, when he shot deceased, that the latter would inflict injury on him, if not checked, as he had done in the former affray, when he bit defendant's fingers.  The instruction, as given, practically eliminated this feature of defendant's defense.  The jury, in considering the merits of the controversy, should have been left free to consider all that had occurred between deceased and defendant as shown by the evidence.  Under the statute above quoted, the court had no legal right to single out that part of the affray at the north side of the bridge, relating to the biting of defendant's fingers, and to tell the jury the legal effect of such an isolated portion of the evidence, instead of leaving the jury to consider this question with all the other matters relied upon as a defense in the cause.  We are of the opinion that the above instruction was not only prejudicial to defendant's rights, but that the giving of same was in contravention of the statute, supra, and the decisions of this court in construing same.  [State v. Fish, 195 S. W. l. c. 998; State v. Dixon, 190 S. W. l. c. 294; State v. Malloch, 269 Mo. l. c. 239; State v. Rogers, 253 Mo. l. c. 412; State v. Shaffer, 253 Mo. l. c. 337; State v. Raftery, 252 Mo. l. c. 80; State v. Mitchell, 229 Mo. l. c. 697; State v. Rutherford, 152 Mo. 124, 133; State v. Reed, 137 Mo. l. c. 139; State v. McCanon, 51 Mo. 160.]

In our opinion, the foregoing authorities leave no room for cavil or doubt, as to the illegality of said instruction ten.  According to our conception of the law, if this instruction is sustained, the court, with the same propriety, could have instructed the jury that deceased's quarrelsome character did not afford any ground for

defendant shooting him. It could likewise have instruct-
ed that the threats of deceased, when leaving the scene
of combat at the north end of the bridge where he had
bitten defendant's fingers, to the effect that he would
get defendant before night, did not, within itself, author-
ize defendant to shoot deceased.

In other words, we hold that the trial court was not
justified in selecting detached portions of what occurred
between defendant and deceased at the north end of
the bridge, but should have left the jury to weigh all
the evidence in the case, including the biting of de-
fendant's fingers, in determining whether appellant
shot deceased through revenge, or to avoid additional
injuries at his hands.

On account of the giving of said instruction ten
(10), the cause is reversed and remanded for a new
trial. *White* and *Mozley CC.*, concur.

PER CURIAM:—The foregoing opinion of RAILEY,
C., is hereby adopted as the opinion of the court. All
concur, except as modified in separate opinion of *Wil-
liamson, J.*, in which all concur.

WILLIAMSON, J. (concurring).—I concur in the
opinion of the learned commissioner so far as it holds
that the judgment must be reversed and the cause re-
manded because of an error in the instructions. I am
not content, however, to leave untouched in the opinion
another matter of which complaint is made.

The information is assailed as fatally defective be-
cause it concludes with the words "against the peace
and dignity of State," and therefore fails literally to
follow the formula prescribed by the Constitution which
runs thus: "against the peace and dignity of the State."
The omission of the definitive "the" before the word
"State" is said to constitute fatal error.

Section 38 of Article VI of the Constitution of Mis-
souri is as follows:

284 Mo.—44

"All writs and process shall run and all prosecutions shall be conducted in the name of the State of Missouri; all writs shall be attested by the clerk of the court from which they shall be issued; and all indictments shall conclude, 'against the peace and dignity of the State.' "

A similar provision is found in the Constitutions of various other states. It has been said by this court on more than one occasion, and by the courts of last resort of. other states having similar constitutional provisions, that the error here complained of is fatal. A decent respect for those authorities forbids that a different view should be announced dogmatically and without discussion.

The Missouri Constitution of 1845 contained a similar provision. In State v. Lopez, 19 Mo. 255, l. c. 256, an indictment concluding in the same words as were used in the information in the case at bar, was held to be fatally defective for that reason. There was no discussion of the question. This ruling was followed again without discussion in State v. Pemberton, 30 Mo. 376, l. c. 378, an opinion rendered in 1860.

This doctrine was again announced, again without discussion, in State v. Stacy, 103 Mo. 11, l. c. 15, a case decided in 1890; but what was there said on this point was *obiter*.

In 1907 the same point was before this court in State v. Campbell, 210 Mo. 202, l. c. 216, when the question was discussed at length. The cases above mentioned were cited; many decisions from foreign jurisdictions were reviewed , and the error was held fatal. The Campbell case was followed in State v. Skillman, 209 Mo. 408, l. c. 412, and in State v. Warner, 220 Mo. 23, l. c. 25. The case of State v. Campbell, because of the peculiar atrocity of the crime there involved (rape) and because perhaps of the elaborate discussion by which the court's conclusion was forfeited, attracted wide attention at the time and has become known as the "The" case.

The doctrine there announced was, as we have shown, neither new in this State nor peculiar to this State. A correct understanding of the Campbell case may be had only by a study of the opinion itself, but the very pith and marrow of the reasoning there employed, is thus stated by Fox, P. J., who wrote the opinion:

"Our conclusion upon this proposition is that the indictment in this cause *fails to substantially comply in its conclusion with the terms prescribed by the Constitution,* and therefore should be held invalid." [State v. Campbell, 210 Mo. 1. c. 228.] (Italics mine).

That *literal* compliance with the words of the Constitution, even in criminal cases, is not required, is no new doctrine. Thus in State v. Hays, 78 Mo. 600, the indictment concluded "against the peace and dignity of the State *of Missouri,*" and an objection based on the addition of the italicized words was curtly dismissed in these words: "The objection is without merit. The added words are but what the constitutional language implies, and the addition in no wise enlarged, varied or changed the phrase or the sense." [State v. Hays, supra, l. c. 603.]

So, in State v. Duvenick, 237 Mo. 185, l. c. 190, where the indictment concluding "*agains* the peace and dignity of the State," it was held that an objection on that score was "unworthy of serious consideration or discussion," although the attention of the court was solemnly called to the constitutional provision here involved, to the Campbell case and its predecessors, and to the undisputed fact that our language contains no such word as "*agains.*"

We have repeatedly heretofore held certain provisions of our Constitution to be merely directory and not mandatory. For example, Section 24 of Article IV of the Constitution provides that "the style of the laws of this State shall be; '*Be it enacted by the General Assembly, of the State of Missouri,* as follows.'" Yet, in the case of Cape Girardeau v. Riley, 52 Mo. 424, l. c. 426, this

clause was held to be merely directory and not mandatory, citing the rule declared by Lord Mansfield in Rex v. Loxdale, 1 Burr. 447.

Again in the case of Pacific Railroad v. the Governor, 23 Mo. 353, this court held that although the forms prescribed by the Constitution in passing a bill over the Governor's veto had not been observed, still the law was not therefore void.

A part of the very section here under consideration, namely, Section 38 of Article VI, which provides that *"all writs and process shall run and all prosecutions shall be conducted in the name of the State of Missouri,"* was held in judgment by this court in a criminal case, State v. Foster, 61 Mo. 549, l. c. 550, and the quoted clause was held to be directory only and failure to observe it was held to be a mere irregularity.

So, in Riesterer v. Land and Lumber Company, 160 Mo. 141, Section 8 of Article XII of the Constitution was before this court and that section relating to certain acts of corporations was held to be directory only.

In the very recent case of Creason v. Yardley, 272 Mo. 279, l. c. 284, Section 38 of Article VI and Section 24 of Article IV of the Constitution were involved, though not upon the precise point here in question, and upon the authority of a long line of cases there cited the provisions of those sections were held to be directory and not mandatory. This opinion written by RAILEY, C., was adopted as the opinion of Court in Banc, GRAVES, C. J., WALKER, BLAIR and WILLIAMSON, JJ., concurring, FARIS and WOODSON, JJ., concurring in the result, and BOND, J., dissenting.

Numerous decisions of this court upon analogous questions involving points of constitutional construction might be cited, but to do so would be but to attempt to demonstrate the obvious. As was said, in effect, in the Campbell case, substantial compliance with this constitutional provision is all that is necessary. The flaw in the Campbell case is, that after announcing the rule of

substantial compliance, the opinion applies the rule of literal compliance. It is a fundamental rule of construction of all writings, whether they be laws, wills, deeds, contracts or constitutions, that they must be construed as a whole, and not in detached fragments; that they must be construed to effectuate and not to destroy their plain intent and purpose, and that in determining what is that intent and purpose all provisions relating either generally or specially to a particular topic are to be scrutinized and so interpreted, if possible, as to effectuate the intention of the makers. This rule does not need (though it does not lack) authority to give it vitality. It is inherent in the very nature of things, and springs from reason as Minerva sprang from the brain of Jove, full-grown and ready for battle.

Concerning the construction of constitutions it has been well said that:

"Constitutions are not designed for metaphysical or logical subtleties, for niceties of expression, or for the exercise of philosophical acuteness or judicial research. They are instruments of a practical nature founded on the common business of life, adapted to common wants, designed for common use, and fitted for common understandings. The people make them, the people adopt them, the people must be supposed to read them, with the help of common-sense, and cannot be presumed to admit in them any recondite meaning or any extraordinary gloss." [1 Story, Constitution, sec. 451.]

If we turn to a study of our Constitution, we find that it plainly declares its intents and purposes. They are to promote the general welfare of the people and to give security to life, liberty and property; to afford certain remedy for every injury to person, property or character, and to guarantee that right and justice shall be administered without sale, denial or delay. These with other objects, are plainly declared in the Bill of Rights. True, Section 38 of Article VI provides that indictments shall conclude "against the peace and digni-

ty of the State," but to say that to omit the final "the" in that dignified phrase—an omission which impairs its rythm, perhaps, but does not vary its meaning—is fatal error, is to permit a rule of rhetoric to emerge victorious from a conflict with the Bill of Rights. It is to sacrifice substance to form and to allow a trivial omission of a minor word in a subordinate paragraph relating to a mere matter of procedure to outweigh the very fundamentals of the Constitution. No one will contend that the makers of the Constitution ever intended such a consequence.

It has been well said by a high authority that:

"The true rule of construction is not to consider one provision of the Constitution alone, but to contemplate all, and therefore to limit one conceded attribute by those qualifications which naturally result from other powers granted by that instrument, so that the whole may be interpreted by the spirit which vivifies, and not by the letter which killeth." [WHITE, J., in Downes v. Bidwell, 182 U. S. 312.]

That great and painstaking care must be used in conconstruing the Constitution; that it must be solemnly regarded as the final expression of the will of the people, who are the earthly source of all law; that constitutional provisions are not to be frittered away by nice construction or doubtful interpretation, may all be conceded, and indeed, I expressly recognize and assert them. It is in precisely those respects that the reasoning of the "The" case fails. That reasoning sees one clause of one minor section of the Constitution and sees naught else. In literal obedience to one phrase, the dominating scheme and purpose of the whole document are forgotten.

Much musty learning might be dug from forgotten books, did time and space permit, to show the various endings of indictments at common law, and why it may have been thought advisable forty-five years ago, when our Constitution was written, to provide that there should be but one ending, and, but for the same limitations, many authorities might be cited in support of the

views herein announced. It seems sufficient to say that in the case at bar there was a substantial compliance with the requirements of the Constitution, and that is all that is necessary; that to so hold does not deprive the appellant of any right, nor impair any valid defense which he may have; nor arm the State with any new weapon; nor alter the meaning of the charge, nor in any wise interfere with the orderly administration of justice.

I therefore think that appellant's contention that the omission of the word "*the*" before the word "State" in the final phrase of the information is reversible error, should be overruled. I also think that the cases of State v. Lopez, 19 Mo. 255; State v. Pemberton, 30 Mo. 376; State v. Stacy, 103 Mo. 11; State v. Campbell, 210 Mo. 202; State v. Skillman, 209 Mo. 408, and State v. Warner, 220 Mo. 23, 1. c. 25, and all other decisions of this court which follow the holdings of these cases upon the point here involved, should, upon that point, be and hereby are overruled.

To clarify the situation, I also think it should plainly be understood that the law in this State upon this proposition is neither more nor less than this: The omission of the word "the" immediately preceding the word "State" in the phrase "against the peace and dignity of the State," with which all indictments and informations properly should conclude, is not reversible error. *Williams, P. J.,* and *Walker, C. J.* concur.