THE STATE OF MISSOURI, Respondent, *v.* MEREDITH WATERS, Appellant.

### January 26, 1876.

1. An indictment ending with the words "against the peace and dignity of the State, and contrary to the form of the statutes in such cases made and provided by the State," is not bad, as in violation of the constitutional requirements that all indictments shall conclude "against the peace and dignity of the State."

2. A defendant, indicted for murder, appeared in court and agreed with the State's attorney that his trial might proceed on the next day but one; and on the next—being the intermediate—day, demanded a list of the jurors, to be furnished him forty-eight hours before the trial. The list was delivered to him on the same day. *Held*, that in agreeing upon the day for trial he waived his rights as to time, and could not demand a postponement because the jury list was not furnished him forty-eight hours before the trial.

3. In a trial for murder the defendant cannot be compelled to make his peremptory challenges until a panel of forty competent jurors is obtained. The State cannot, by waiving her peremptory challenges, justify a reduction of the panel, and it is error in the court, upon such waiver, to require the defendant to select the jurors from a panel of thirty-two. (GANTT, P. J., dissenting.)

*Per* GANTT, P. J., dissenting: The defendant could not be prejudiced by a reduction of the panel of jurors to the number from which he would otherwise make his peremptory challenges, after the challenges made by the state, when such reduction results from the State's declining to make any challenges. There was no error in so ruling, and the judgment ought to be affirmed.

APPEAL from Lincoln Circuit Court.

*Reversed and remanded.*

*McKee & McFarland*, for plaintiff in error, cited: Mo. Const., Art. 6, sec. 26; State *v.* Lopez, 19 Mo. 255; Clements *v.* State, 4 W. Va. 755; Wag. Stat. 800, sec. 24, p. 1102, secs. 7, 8; State *v.* Klinger, 46 Mo. 224; State *v.* Buckner, 25 Mo. 168; State *v.* McCarron, 51 Mo. 27; State *v.* Holme, 54 Mo. 153.

*Josiah Creech*, for defendant in error, cited: State *v.* Hayes, 23 Mo. 287; State *v.* Klinger, 46 Mo. 224; Wag. Stat. 1090, sec. 27.

LEWIS, J., delivered the opinion of the court.

The defendant was convicted upon an indictment for murder in the first degree. The indictment concluded with these words: "Against the peace and dignity of the State, and contrary to the form of the statutes in such cases made and provided by the State."

Defendant moved unsuccessfully in arrest of judgment, alleging this form to be in violation of the constitutional requirement that "all indictments shall conclude 'against

the peace and dignity of the State.' "    He here insists that, although these words appear near the end, yet, as they are not the last or concluding words, the indictment is bad.

The "conclusion" of an indictment is one of its formal parts or divisions, with which lawyers are generally familiar, and to which reference was made by the framers of the Constitution. It indicates the power or authority against which the facts charged constitute an offense. For such indication, it cannot be necessary that any particular word shall be the last in the indictment. At common law the conclusion was, as to some crimes, "*contra formam statuti;*" and, as to others, "*contra pacem et dignitatem Regis.*" It was never imagined that either of these forms constituted any the less a proper conclusion because one or more words, not altering the sense, were superadded. In other states, which have a constitutional provision similar to ours, sundry efforts have been made to exact a literal transcript of the words, without addition or omission, as indispensable. In a few instances, not strictly analogous to the present case, the exaction was sustained. But the array of authorities holding the opposite view is so overwhelming as to leave no license for a further discussion of the question. The general doctrine is that, if the intent of the Constitution be substantially responded to in this part of the indictment, a literal transcript of the formula is not essential. It is further held that, if the formula be present, other words, not perverting the meaning, will be treated as surplusage. In the light of these rules all objections to the present indictment vanish, excepting, perhaps, such as refer to possible violations of taste. *Zarresseller* v. *The People*, 17 Ill. 101; *Anderson* v. *The State*, 5 Ark. 444; *Commonwealth* v. *Young*, 7 B. Mon. (Ky.) 1; *State* v. *Kean*, 10 N. H. 347; *State* v. *Yancey*, 1 Const. Rep. S. C. 237. In *State* v. *Lopez*, 19 Mo. 255, neither the words "against the peace and dignity of the State," nor any equivalent, appeared. The same is true of other cases cited for defendant. In *Lemons* v. *The*

*State*, 4 W. Va. 755, the expression "W. Virginia" was used, instead of the name "West Virginia," as prescribed in the Constitution; wherefore the indictment was held to be bad. This was no case of surplusage. It was the rejection of a name given by the Constitution, and the adoption of a different one. We find no error in the ruling of the Circuit Court on the point under consideration.

It appears from the record that, on October 6, 1875, the defendant appeared in court, waived an arraignment, and agreed with the State that his case should be tried on the 8th; that on the 7th he made a formal demand for a list of the jurors, to be furnished him "forty-eight hours before the trial." The list was then furnished, but on the 8th he declared himself not ready for trial, because forty-eight hours had not elapsed since his receipt of the list of jurors. The court disregarded the objection, and directed the trial to proceed, to which ruling the defendant excepted.

In *State* v. *Klinger*, 46 Mo. 224, Judge Wagner, construing the provision (Wag. Stat. 1102, sec. 8) upon which this claim was founded, says: "It is simply a privilege which the statute extends to the accused for his benefit, and, if he does not make the demand or require the list, he is presumed to have waived it." It seems unquestionable that, if the accused may waive the entire privilege, he may, with equal effect, waive one of its elements—that of time, for instance. The defendant in this case, forty-eight hours before the time of trial fixed by his own agreement, and for yet twenty-four hours later, made no demand for a list of the jurors. He waived it, then, up to twenty-four hours before the trial, when his demand was complied with as soon as made. It would be strange, indeed, if he could be allowed thus to mislead the State by a waiver and a consent to trial, only to withdraw the waiver at convenience. By his silence, when the day of trial was agreed upon, he at least waived the element of time in his right to be furnished with the jury list. He could then assert no right until

demand actually made ; and from that time, as the record shows, he was allowed no cause of complaint. The ruling on this point was manifestly proper.

In another matter of exception the action of the Circuit Court was less free from objection. Upon proceeding to trial of the cause, as the record shows, " the court ordered the clerk to deliver to the defendant a list of thirty-two qualified jurymen from which to select a jury, the State having waived her challenges. To which order of the court, compelling the defendant to select a jury from said list containing only thirty-two qualified jurors, the defendant then and there excepted."

In murder cases, the State is entitled to eight and the accused to twenty peremptory challenges. Section 7, Wagner's Statutes, page 1102, says :

" There shall be summoned and returned, in every criminal cause, a number of jurors equal to the number of peremptory challenges, and twelve in addition ; and no party shall be required to make peremptory challenges before a panel of such number of competent jurors shall be obtained."

According to this, forty competent jurors were necessary to make up the panel in the present case.

It is argued that, by the State's surrender of her eight challenges, there was left to the defendant his full number of twenty, before the jurors were reduced to twelve. Admitting this to be true, I do not know by what authority we can accept proposed results as an excuse for disobeying a positive rule of law. When the law prescribes a specific method by which a thing must be done, we have no right to reject that method and adopt a different one merely because, in our opinion, the latter is as good as the former to produce the result intended. This consideration alone is, to my mind, conclusive of the question.

But the argument is fallacious, even as applied to the ultimate design of the statute. The privilege which the

law intends is not merely that the accused may reject twenty men before the jurors are elected for the trial. If this were all, they might be presented successively, one at a time, until his peremptory challenges were exhausted. He would then be allowed no choice between the next man or men—although possibly far more obnoxious—and the twenty who preceded them. The law means that the defendant, upon a survey of forty names presented to him, may, by tests of his own, which no man may question, determine which twenty of them are likely to be less, or more, inimical to his interest than the remainder. This comparison of the jurors, one with another, is of the very essence of the privilege. It seems idle to pretend that such a comparison, when limited to a panel of thirty-two, is of equal value with one which may range over forty names. Hence, in *State* v. *McCarron*, 51 Mo. 27, where the circuit court, upon the qualifying of the first twelve men out of a panel of forty, had required the parties to make their peremptory challenges before the calling of the remainder, the judgment was reversed. Said the Supreme Court: " The defendant was entitled to challenge twenty peremptorily, and the State eight; and till the whole forty men were called, passed, and qualified as jurors, the court could not require either party to exercise the right of peremptory challenging."

It is contended that, upon the presentation of forty names, the State's challenge of eight still reduces the number out of which the defendant may choose to thirty-two; and that, if eight had been added in the present instance, as demanded by the defendant, the State, by challenging the same eight (or refusing to make any challenges), would have restored the situation as before. These propositions will not bear analysis.

As to the first: There is no law by which the State is either entitled or required to make her challenges first. Indeed, a different practice was expressly sanctioned in

*State* v. *Hays*, 23 Mo. 287. The defendant, then, exercising his right either first or simultaneously with the State, may, by striking out some of the eight otherwise proposed to be omitted by the State's waiver, compel the State to challenge an equal number of the remaining thirty-two. On the other hand, if the State challenge first, she may reject but a few or none of the eight who would, by her waiver, have been omitted from the panel, and thus. enable the defendant so to make his challenges as to secure others of the same eight upon the jury which is to try him. In either case the composition of the trial jury would differ from that created from a panel of thirty-two names with a waiver of the State's privilege. Say that these are only chances ; and yet they are precisely the chances of which, among others, the law enables the defendant to avail himself according to his best judgment. The second proposition stands upon a similar footing. It could never be held in advance that the State would infallibly reject the eight. additional names, or would decline to challenge at all. There would be chances, at least, the other way ; and, whether good or bad, many or few, the defendant cannot. lawfully be deprived of them.

But, however we may speculate about practical results, it is enough, as before intimated, that the law here prescribes an exact method by which we are to reach them. It is the business of courts to declare the law ; not to make or improve upon it, nor yet to substitute equivalents. The language employed by Judge Wagner, in *State* v. *Holme*, 54. Mo. 160, seems eminently appropriate here :

" No error that is not a violation of some positive rule of law, or which may not possibly prejudice the defendant, can be a ground for reversal on appeal ; but it is with great. hesitancy that the courts will say, in a criminal case, that an error does not prejudice the defendant. In the present case a positive rule of law is violated, and the statute which declares that certain persons shall be selected to try the

cause is set at naught, and other persons substituted in their place. And this is done against the objections of the defendant, made at the time. In this action we think the court committed a substantial error.''

Judge BAKEWELL concurring, the judgment must be reversed and the cause remanded. Judge GANTT dissents.

GANTT, P. J., delivered a dissenting opinion:

I am unable to concur with the majority of the court in this case. I find no error in the record. The supposed error consists in the order made by the Circuit Court that, the State having waived its right of peremptory challenge altogether, the accused should proceed to make his challenges when the panel was, by challenges for cause, reduced to thirty-two competent jurors.

The provision of the statutes supposed to be violated by this order is the following:

"There shall be summoned and returned in every criminal case a number of qualified jurors equal to the number of peremptory challenges, and twelve in addition; and no party shall be required to make peremptory challenges before a panel of such number of competent jurors shall be obtained." Sec. 7, p. 1102, of Wag. Stat.

In capital cases the accused may peremptorily challenge twenty, and the State may challenge eight. If both parties wish to exercise their full right of challenge, a panel of forty will be required in such cases. But either party may waive this right. At any rate, it is not to be doubted that the State may waive it.

Accordingly, when, by reason of challenges for cause, the panel was reduced to thirty-two, the State, wishing to save time, waived its right of peremptory challenge altogether, and requested the court to order the accused to make his challenges from a panel which accurately consisted of the full number of peremptory challenges possible, and twelve in addition. In substance, the State said: "I wish to save

time.   The panel now consists of twelve, besides the per-
emptory challenges of the accused.   I waive my right of
challenge altogether.   It is to no earthly purpose that eight
more jurors should be added to the panel.   I can, at my
option, either confine my challenge to these new men, or
refuse to make any challenges.   In neither case can any of
the eight form part of the traverse jury.   In both cases that
body must be composed of the same men, part of the orig-
inal thirty-two, who may be left after the accused has
exhausted his right of challenge.   If he confines himself to
the original thirty-two, there will be, in either case, twelve
of these remaining.   If he challenges some of the eight
new men, there will be more than twelve remaining of the
original thirty-two.   When the challenges are over, the first
twelve remaining on the panel will compose the traverse
jury.   By no possible chance can the accused put on that
jury any of the new or additional men.   It will, therefore,
be entirely useless and vain to put them on the panel."

The Circuit Court saw no answer to this reasoning, nor
can I.   If a possibility of prejudice to the prisoner resulted
from the order made by the court, I should be in favor of
reversing the judgment.   Seeing no such possibility, and
believing that the rule of law which compels no one to do a
vain or useless thing is emphatically applicable to courts
of justice, I am in favor of affirming the judgment of the
Circuit Court.