State v. Campbell.

---

THE STATE v. BRUCE CAMPBELL, Appellant.

Division Two, March 17, 1908.

1. INDICTMENT: Indorsement of Prosecuting Attorney. It is sufficient for the prosecuting attorney to add the words "prosecuting attorney" after his signature on the indictment. It is not necessary that there should be added the words "of Greene county, Missouri."

2. ———: Indorsement of Clerk. An indorsement of the indictment by the clerk is sufficiently full if the clerk writes the words thereon: "Filed Dec. 5th, 1905. Josiah M. Harrell, clerk." It is not necessary that he add the words "of the criminal court of Greene county, Missouri."

3. ———: Against the Peace and Dignity of the State: Omission of The Before State. The indictment concluded, "against the peace and dignity of State." Held, that the omission of the

word "the" before the word "State" is fatal. The Constitution specifically requires all indictments to conclude "against the peace and dignity of the State," and while the law requires only a substantial compliance with the requirement, the allegation without the word "the" cannot be said to be a substantial compliance therewith. Without that word the conclusion does not unequivocally indicate the power or authority against which the facts charged constitute an offense.

4. ———: ———: Constitutional Prescription. The formula "against the peace and dignity of the State" is prescribed by the Constitution, and is therefore a matter of substance in every indictment; and however meaningless or useless courts and lawyers and defendants might consider it, and though the accused may in no manner be prejudiced or misled by its omission, yet, since the Constitution prescribes it, it cannot be disregarded or dispensed with, nor can any part of it unless words of exact equivalency are used in place of the omitted part.

5. INSTRUCTIONS: Refusal of Defendant's. Where the court by its instructions correctly and fully covers every phase of the case to which the testimony is applicable, it is not error to refuse any or all instructions asked by defendant.

6. ———: No Evidence. Instructions should not be given on any subject in the absence of evidence on which to base them.

7. ———: Erroneous: Comment on Evidence: Argumentative: Similar Asked by Appellant. An instruction which is a comment on the evidence, in that it tells the jury that "even if they believe defendant and all witnesses introduced on his behalf have sworn falsely," or strongly partakes of an argument, in that it tells the jury that "even though the testimony on behalf of defendant falls short of proving his innocence," is erroneous, and would constitute reversible error were it not for the fact that defendant requested a similar instruction.

8. JURY: Impaneling: Political Parties. The statute does not require the court to select the panel of jurors in equal numbers from the two political parties. The qualification of jurors is prescribed by statute, and the panel should be drawn in accordance with its prescriptions.

9. STATEMENT: Reading Affidavit. The prosecuting attorney should not in his opening statement in the trial in the criminal court read the affidavit made by prosecutrix before the justice of the peace who issued the warrant for defendant's arrest. Such affidavit does not form a basis of the prosecution in the trial of the felony, and if it is competent evidence the time to read it is when it is introduced as evidence.

State v. Campbell.

10. **EVIDENCE: Rape: Prior Solicitations.** The State may prove improper acts and solicitations to sexual intercourse by the accused towards the prosecutrix prior to the rape charged, in order to show his probable motive. But testimony that "we were down at the spring to haul a barrel of water; I had told his wife I had been getting lonesome, and she told him; so when we went to haul the barrel of water he asked me why it was I was getting lonesome; if it was because I couldn't be with him, and I said no, it wasn't. That's all I said, and all he said," is not of that nature and character as would classify it as improper acts or solicitations to sexual intercourse, and hence was not admissible.

11. ———: ———: ———: **Communicated to Defendant's Wife.** And being incompetent and inadmissible, the fact that prosecutrix testified that she afterwards communicated the conversation to defendant's wife in his absence, could not have prejudiced defendant and would not constitute reversible error.

12. ———: ———: **Communicated to Another Woman.** Testimony of a woman that on the morning of the alleged assault prosecutrix passed her house and she called to her, that she was crying, was bareheaded and her hair disheveled, and that when she offered to tell her about the alleged assault she told her she did not want to hear her troubles, and directed her to the home of the justice of the peace, is competent evidence.

13. ———: **Of Physician: Rape: Examination Five Days Later.** Testimony of a physician that he made an examination of prosecutrix five days after the alleged assault, that such examination disclosed a laceration of the hymen covering the opening of the vagina, and that in his opinion this laceration had been there from three to five days, was competent evidence.

14. ———: **Sufficiency: Rape.** The evidence in this case is held sufficient to warrant the court in submitting the issues to a jury, under proper instructions and a valid indictment, charging defendant with rape upon his household servant nineteen years old.

Appeal from Greene Criminal Court.—*Hon. A. W. Lincoln,* Judge.

REVERSED AND REMANDED.

*George Pepperdine* and *Delaney & Delaney* for appellant.

(1) On the whole evidence, the trial court should have directed an acquittal, and the judgment of this court should be a discharge of the defendant, because there is no substantial evidence to sustain the verdict. To constitute the crime of rape, a penetration must be shown, and this penetration must be accomplished by force and violence sufficient to overcome the utmost resistance of the prosecutrix, or the penetration, in the absence of force and violence, must be accomplished by fear or threats, dispensing with and excusing the resistance otherwise required. The indictment does not aver that the alleged rape was committed by threats, or by intimidation, or by putting in fear; nor is there a scintilla of evidence tending in the remotest degree to show that the alleged rape was in such way and by such means committed. On the contrary, the indictment charges force and violence, and the entire evidence, if of any probative force whatever, tends to show that the rape, if committed, was the result of force and violence. This being so, the doctrine of utmost resistance is applicable. As there is no substantial evidence that force and violence were used, this conviction cannot stand unless the court repudiates the doctrine of resistance. If the distinction between rape committed by force and rape committed by intimidation is borne in mind the seeming conflict in the decisions will disappear. All of the cases recognize this distinction. State v. Burford, 53 Mo. 65; State v. Joeger, 66 Mo. 173; State v. Perkins, 11 Mo. App. 82; State v. Patrick, 107 Mo. 147; State v. Dusenberry, 112 Mo. 277; State v. Murphy, 118 Mo. 7; State v. Montgomery, 63 Mo. 296; State v. Priestly, 74 Mo. 24; State v. Cunningham, 100 Mo. 38; State v. Shroyer, 104 Mo. 441; State v. Dalton, 106 Mo. 463; State v. Whitsell, 111 Mo. 202; State v. Scholl, 130 Mo. 396; State v. Hayden, 141 Mo. 311; State v. Harris, 150 Mo. 56; State v. Huff, 161 Mo. 459; State v.

Neal, 178 Mo. 63; State v. Owsley, 102 Mo. 678; State v. Marks, 140 Mo. 656; State v. Edie, 147 Mo. 535; State v. Hamey, 168 Mo. 167; Champaigne v. Hamey, 189 Mo. 709. The State predicates the verdict upon the theory that force and violence were used to overcome prosecutrix, and therefore the doctrine of utmost resistance is applicable. We respectfully submit that an analysis of the testimony will absolutely dispel the idea of force in a legal sense and will stamp this verdict as being the result of prejudice aroused by the heinousness of the offense charged. (2) Section 38 of article 6 of the Constitution provides that all indictments shall conclude "against the peace and dignity of the State." This provision is mandatory and a constitutional provision cannot be destroyed by inferences and refuge cannot be taken behind the plea of clerical error or omission. State v. Lopez, 19 Mo. 254; State v. Clevenger, 25 Mo. App. 653; State v. Pemberton, 30 Mo. 376; State v. Stacy, 103 Mo. 11; State v. Schloss, 93 Mo. 61; State v. Ulrich, 96 Mo. App. 689; State v. Hays, 78 Mo. 600; State v. Reakey, 1 Mo. App. 3; State v. Waters, 1 Mo. App. 7. No indictment has ever been sustained that did not aver that the act complained of is "against the peace and dignity of the State."

*Herbert S. Hadley*, Attorney-General, and *John Kennish*, Assistant Attorney-General, for the State.

(1) The indictment is sufficient. Complaint is made that the indictment does not comply with section 38 of article 6 of the Constitution of this State, in that, in the concluding portion thereof, "against the peace and dignity of State," the word "the" is omitted immediately preceding the word "State." State v. Waters, 1 Mo. App. 9; 1 Bish. New Crim. Proc., p. 652. The article "the" is an unimportant word frequently omitted in common conversation and in writing where it could properly be used, and in some languages, as

the Latin, being supplied when necessary, there being no specific word to represent it. And under the law its omission clearly did not invalidate the indictment. (2) It is shown in evidence that shortly after the alleged assault the prosecuting witness started on foot to Springfield, and that the defendant's nearest neighbor, Mrs. Garton, seeing her condition, called to her to stop. Appellant contends that the court erred in permitting the prosecutrix and Mrs. Garton to testify as to what occurred between them. Mrs. Garton testified to the appearance and condition of the prosecutrix when she saw her, and as this was very shortly after the time of the alleged assault, and the first person whom the prosecutrix had seen thereafter, this evidence was undoubtedly competent. State v. Sanford, 124 Mo. 484; State v. Murphy, 118 Mo. 7; State v. Dusenberry, 112 Mo. 277; 2 Bishop's New Crim. Proc., 963. Mrs. Garton was asked whether the prosecutrix had reported what defendant had done to her that day. She answered that she did not, and that the reason she did not was because she told the prosecutrix she did not want to hear it. The prosecutrix testified that she told Mrs. Garton the defendant had insulted her, and that she was going to have him arrested. Upon Mrs. Garton's suggestion and direction, she went directly from Mrs. Garton's about three miles, to the home of Mr. Cantrell, a justice of the peace, and there, between one and two o'clock of the same day, informed Mrs. Cantrell, the wife of the justice, of the assault, but did not detail the particular facts thereof. This testimony was admitted over the defendant's objection. It will be observed that the testimony as to what the prosecutrix said, both to Mrs. Garton and to Mrs. Cantrell, is limited to the mere fact that she made complaint of the outrage committed upon her, but does not give the particular facts or details thereof, and as this occurred within a few hours

after the alleged offense, so soon, in fact, that the witness had done nothing else except to take steps to redress the wrong done to her, such evidence was entirely competent under the well-settled law. State v. Wertz, 191 Mo. 578; 2 Bishop's New Crim. Proc., sec. 965; Kelley's Crim. Law and Prac., sec. 541; Underhill on Crim Evid., sec. 409; State v. Marcks, 140 Mo. 656; State v. Bateman, 198 Mo. 212; State v. Warner, 74 Mo. 83. (3) The evidence of Doctor Carter as to the condition of the prosecutrix as disclosed by an examination made on the third day after the alleged assault, was competent under all the authorities. State v. Scott, 172 Mo. 536; Underhill on Crim. Evid., sec. 412.

FOX, P. J.—From a judgment of conviction in the criminal court of Greene county upon a charge of rape, defendant appeals. The indictment upon which this prosecution is based, is as follows:

"In the Criminal Court of Greene County, Missouri, November Term, 1905.

"State of Missouri, County of Greene, ss.

"The grand jurors of the State of Missouri, impaneled, sworn and charged to inquire within and for the body of Greene county, upon their oath present, that Bruce Campbell late of the county and State aforesaid, on the 28th day of September, A. D. 1905, at the county of Greene, and State of Missouri, in and upon the body of one Willie Clark, unlawfully, violently and feloniously did then and there make an assault, and her the said Willie Clark, then and there unlawfully, forcibly and against her will, feloniously did ravish and carnally know, contrary to the form of the statute in such cases made and provided; and against the peace and dignity of State.

"Roscoe C. Patterson,

"Prosecuting Attorney.

"'This is a true bill.

"MARION PHILLIPS,

"Foreman of Grand Jury.

"Filed Dec. 5th, 1905.

"JOSIAH M. HARRELL, Clerk."

After two continuances upon the application and at the instance of the defendant, the cause was tried at the July term, 1906, of said Greene County Criminal Court. On July 23, 1906, defendant filed his motion to quash the indictment, which motion was on the same day overruled by the court and an exception saved to such ruling. Thereupon on the same day defendant filed a motion to quash the regular panel of jurors. Evidence was offered by the defendant to the court in support of the motion to quash the panel, at the close of which the motion was overruled and an exception saved.

The evidence for the State tended to prove the following facts:

The prosecuting witness, Willie Clark, was an unmarried female, and at the time of the alleged offense was between eighteen and nineteen years of age. She had come from Arkansas, her native State, to Greene county, Missouri, but a few months before. When she was an infant her mother had died, and thereafter she had never lived with her father and had rarely seen him, but had been reared and had always lived with a Miss Ray in the State of Arkansas until the 15th day of March, 1905. She had been informed that her father and brother were living in Joplin, Missouri, and intending to go to them, she made preparations for the trip, Miss Ray assisting her, and on the last-named date started for this State in a wagon with a family named Corneilson. This family, for some time before, had been living in the same house with Miss Ray and the prosecuting witness. The Corneilsons were poor and did not own a

team and wagon, and the trip was made by hiring a team and wagon to take them from place to place on their journey. Miss Ray had provided the prosecuting witness with a satchel containing clothing and $15.50 in money, which money and clothing she had placed in the care of the Corneilson family. Before leaving Arkansas, the arrangement was that the prosecuting witness was to leave the Corneilson family at Chadwick and there take the train for Joplin, Missouri, her destination; but when they arrived at Chadwick, the Corneilsons refused to give her either her clothing or money and would not permit her to leave. They continued their journey northward in a wagon until in the latter part of March they arrived at defendant's pasture, about five miles south of Springfield, Missouri. With the defendant's consent they camped in his pasture in a tent for about a week (the driver who had taken them thus far having returned with his team and wagon), during which time the prosecuting witness and Mrs. Corneilson had several times visited the defendant's home for the purpose of obtaining provisions, and conversed with his wife. During those visits something was said about the prosecuting witness making her home with defendant's family and helping them with the household work. On Sunday, after the Corneilson family had been in the defendant's pasture about a week, the defendant took them in his wagon beyond the town of Brookline, where he left the Corneilsons, but the prosecuting witness returned with him to live in his family, as previously arranged. She continued to live there until September 28, 1905, being a period of about six months. On the last-named date, prosecutrix testified that between eight and nine o'clock in the morning, defendant's wife drove to Springfield to meet her sister, taking her little girl with her, leaving the prosecuting witness at the house, and the defendant started

to his field, located about three-quarters of a mile from the house, about eight o'clock, to drill wheat. Shortly. after his wife left defendant returned to the house with his team and drill, tied his team at the south gate and went into the kitchen. "I was washing dishes. and he came in and set down by the kitchen door, and when he set down there he says to me, he asked if I had learned to love him yet. I told him no I hadn't and I wouldn't. He never said any more. I finished washing the dishes and went into the bedroom to get the broom to sweep the floor, and when I went to come back in there he grabbed me by the arm; I tried to hit him with the broom and he grabbed the broom out of my hands and throwed it down, and I held to the facing of the door." Prosecutrix testified that defendant then grabbed her with both arms, threw her on a sofa and ravished her. "I hollowed as loud as I could. I couldn't get away or do anything; he held me so tight. When he was holding me there at the door I told him if he didn't turn me loose I would have him arrested and he said if I had him arrested for what he was going to do I would suffer. Q. Then what did he do when he got through? A. Got up and turned me loose and I went on to the kitchen and grabbed the broom and went in the dining room like I was going to sweep. He sat down a minute and then acted like he was going to start at me again and he walked up and asked me if I would give him my hand on this. I said no I wouldn't give him my hand on anything, and then he said if I wouldn't tell it, he wouldn't tell it and I told him I would tell it, and while he was holding me at the door he said he would pay me any amount of money I would ask, five, ten or a hundred dollars. I told him I didn't want any of his money." The defendant then returned to the field to work. At the time of the alleged assault the prosecutrix testified that she was dressed in blue calico dress and un-

derskirt. The prosecuting witness hurriedly changed her clothing, took $10 in money and a parasol, and after placing the defendant's revolver in her right stocking started on foot to Springfield to have defendant arrested. On the way a neighbor, Mrs. Garton, stopped her; prosecutrix stated to her that defendant had insulted her and she was going to have him arrested. Mrs. Garton directed her to the home of a justice of the peace, a distance of four miles, where she went on foot, told the wife of the justice what had occurred and lodged a complaint against the defendant, upon which the latter was placed under arrest the same day.

Over the objections of defendant prosecutrix testified that during the month of August, 1905, she and defendant went to a spring on the farm of defendant to fill a barrel of water; this spring was located a short distance from the house of defendant. "I had told his wife I had been getting lonesome and she told him; so when he went to haul the barrel of water he asked why it was I was getting lonesome; if it was because I couldn't be with him, and I said no, it wasn't. That's all I said and all he said." Prosecutrix further testified that she reported this matter to the wife of defendant upon her return to the house.

Mrs. Garton testified that prosecutrix passed her house on the morning of the alleged offense and that she called to her; prosecutrix was crying; she was bareheaded and her hair was disheveled; when prosecutrix offered to tell her about the alleged assault she told her she did not want to hear her troubles, but directed her to the home of a justice of the peace.

Dr. Carter testified that he made an examination of the prosecutrix on October 1st following her alleged assault, and that such examination disclosed a laceration of the hymen covering the opening to the vagina. Witness stated that in his opinion this laceration had been there from three to five days.

To Constable Owen on the day of the alleged offense, and after giving bond, defendant stated, "I have a notion to plead guilty."

Defendant was a witness in his own behalf and testified that on the morning of the alleged crime he went to the field to work, three-quarters of a mile from the house, between eight and nine o'clock, and before his wife had left for Springfield, and that he remained there until noon. He denied that he had been guilty of any misconduct toward the prosecuting witness. Defendant also denied having made the statement testified to by the witness Owen. The defendant was corroborated by his wife on some matters in which he contradicted the testimony of the prosecuting witness.

Witness Knowles testified that on the morning of the alleged assault, about eight o'clock, he saw defendant going west on the big road to his field; that defendant was driving a team attached to his wheat drill. This witness further stated that he remained in his field until twelve o'clock and that defendant did not return on that road; that he could have returned to his home by another road, but that would be two or three miles out of the way; that the only other way to get to his home would be across fields and by taking down fences.

Mrs. Mikesell testified that on the day of the alleged offense prosecutrix passed her home and inquired of witness the way to Squire Cantrell's and on being asked her mission laughed and said, "I want to see him."

The State, in rebuttal, introduced witness Doss, who testified that his farm adjoined a tract of land belonging to defendant. That on the morning of the alleged offense in search of his calves he went upon the land of defendant and saw a wheat drill in a piece of new worked ground; that he had a good view of the land and that there was no sign of defendant, his

horses or wagon. That after searching for his calves he got home about ten o'clock and in his judgment he had been looking about an hour and a half.

At the close of the State's evidence defendant asked an instruction in the nature of a demurrer, which was by the court overruled. The cause having been submitted to the jury they returned a verdict finding defendant guilty and assessed his punishment at five years' imprisonment in the penitentiary. Motions for new trial and in arrest of judgment were filed in due time and by the court overruled. Judgment and sentence having been entered in accordance with the verdict, defendant appeals.

## OPINION.

The record in this cause discloses numerous complaints of error as a basis for a reversal of the judgment in this proceeding. We will give the assignments of error such consideration as the importance of the questions presented demands and merits.

## I.

The sufficiency of the indictment returned by the grand jury of Greene county is challenged upon numerous grounds. First, it is insisted that it is not sufficient for the prosecuting attorney to sign his name as "prosecuting attorney," but it is essential that there should be added "of Greene county, Missouri." Second, it is contended that the indorsement on the indictment by the clerk of the court is not sufficiently full in describing the court in which the indictment was found, and the sufficiency of the indictment is challenged upon that ground. Third, it is earnestly insisted that the indictment in this cause is invalid for the reason that it fails to comply with section 38 of article 6 of the Constitution of this State, which provides that all indictments shall conclude "against the peace and dignity of the State."

It is sufficient to say upon the first two complaints

directed against the sufficiency of this indictment that they are without merit.  Roscoe C. Patterson signed this indictment as prosecuting attorney and the court was warranted in taking judicial notice of its officers, and it was not essential that he should add.to his signature the county and State of which he was the prosecuting attorney.  The indorsement by the clerk was entirely sufficient.  This indictment was returned into court indorsed:  "This is a true bill, Marion Phillips, Foreman of Grand Jury; filed Dec. 5th, 1905, Josiah M. Harrell, Clerk."

It was expressly ruled by this court in the case of State v. Lord, 118 Mo. l. c. 4, that an indictment returned into the circuit court indorsed in a similar way as the one in the case at bar, was entirely sufficient to show that the indictment was returned by the grand jury into the proper court.  [State v. Meinhart, 73 Mo. 562; State v. Grate, 68 Mo. 22; State v. Pitts, 58 Mo. 556; State v. Weaver, 10 S. E. 486; Stewart v. State, 24 Ind. 142; State v. Bordeaux, 93 N. C. 560; State v. Gainus, 86 N. C. 632; Mose v. State, 35 Ala. 421.]

The final complaint in which the sufficiency of this indictment is challenged, that is, that it fails to comply with the constitutional requirement in its conclusion, is by far the most serious proposition disclosed by the record before us in this cause.  Article 6, section 38, of the Constitution of this State provides that "all writs and process shall run and all prosecutions shall be conducted in the name of the 'State of Missouri;' all writs shall be attested by the clerk of the court from which they shall be issued; and all indictments shall conclude, 'against the peace and dignity of the State.'"

It will be observed that the conclusion to the indictment now under consideration is "against the peace and dignity of State."  The complaint of learn-

ed counsel for appellant is directed against this conclusion on the ground that the word "the" is omitted immediately preceding the word "State."

At the very threshold of the consideration of the proposition now under discussion there is no dispute that there must be substantial compliance with the provisions of the Constitution respecting the conclusion that all indictments shall conclude "against the peace and dignity of the State." It has been expressly ruled by this court that no formal charge of crime is sufficient without the averment of the conclusion to an indictment as contemplated by the Constitution. [State v. Stacy, 103 Mo. 11; State v. Lopez, 19 Mo. 254; State v. Pemberton, 30 Mo. 376.] This constitutional requirement that all indictments shall conclude "against the peace and dignity of the State," in effect is a requirement that all indictments shall point out in their conclusion that the offense as described in the main body of the indictment is "against the peace and dignity of the State" which entertains and exercises jurisdiction of the offense charged.

A number of states have a similar constitutional requirement to ours as to the conclusion of indictments or informations, and it is significant that the appellate courts of the various states having a like constitutional provision have uniformly held, where such constitutional provision has been in judgment before them, that it was essential to the validity of an indictment or information that the constitutional requirement be substantially complied with. An examination of the authorities indicates some difference in the degree of exactness required in following the constitutional language in the various states, but they are all practically uniform that there must be a substantial compliance with such constitutional requirement.

In State v. Hays, 78 Mo. 600, the conclusion of the indictment embraced all the words required by the

Constitution, but also embraced the additional words "of Missouri." The conclusion in that case was, "against the peace and dignity of the State of Missouri." The objection urged to that conclusion was, not that the conclusion did not embrace the words prescribed by the Constitution, but that the addition of the words "of Missouri" invalidated the indictment. This objection was held by this court without merit, and this court said that "the added words are but what the constitutional language implies, and the addition in no wise enlarged, varied or changed the phrase or the sense." In other words, it was in effect that the phrase embraced in the conclusion required by the Constitution, "The State," in fact meant the State of Missouri.

To the same effect is State v. Schloss, 93 Mo. 361. The conclusion to the indictment in that case embraced the words required by the Constitution, but also added "contrary to the form of the statute." It was held and properly so that this contention was untenable for the reason that the mere additional words would not invalidate the indictment when the conclusion embraced the language designated by the Constitution.

In one of the leading cases, State v. Kean, 10 N. H. 347, the language used in the conclusion was "against the peace and dignity of our said State," instead of "the State" as required by the Constitution. It was held by the court in that case that the use of the language was not such a departure from the language required by the Constitution as to vitiate the indictment. It will be observed in that case, as well as in the Hays and Schloss Missouri cases, that while the language used in the conclusion was not identical with that prescribed by the Constitution, yet the language used did fully conform to the requirements of the Constitution by clearly indicating the

State which was offended by the violation of the law which was charged in the body of the indictments.

So, in the case of Zarresseller v. People, 17 Ill. 101. In that case the indictment concluded "against the peace and dignity of the People of the State of Illinois." The twenty-fifth section of the fifth article of the Constitution of that State provides that all prosecutions shall be carried on "in the name and by the authority of the people of the State of Illinois," and conclude "against the peace and dignity of the same." It was very properly ruled in that case that the conclusion was the same in substance as required by the Constitution and within the spirit and meaning of the requisition.

In Anderson v. State, 5 Ark. 444, the indictment concluded "against the peace and dignity of the people of the State of Arkansas." The Constitution of that State required that the conclusion should be "against the peace and dignity of the State of Arkansas." It was correctly held that this slight deviation from the form prescribed in the Constitution would not invalidate the indictment.

To the same effect is State v. Robinson, 27 S. C. 615, where the language in the conclusion of the indictment was "the same State aforesaid," instead of "the State." It will be observed in that case that all the constitutional words were present but the words "same" and "aforesaid" were added. Clearly that case was properly decided when it held that the addition of those words did not change the sense or meaning of the clause.

To the same effect is State v. Pratt, 44 Tex. 93, in which the word "Texas" was added, and it was held that that additional word to the concluding language required by the Constitution should not invalidate the indictment.

In State v. Waters, 1 Mo. App. 7, as heretofore

suggested, that court, speaking through Judge Lewis, clearly pointed out the purpose and meaning of the terms designated by the Constitution, "against the peace and dignity of the State," that is, that it was to indicate the power or authority against which the facts charged constituted an offense.   In other words, that while the exact language prescribed by the Constitution need not be used, yet such terms must be used as will indicate the State against which the facts charged constitute an offense.   It is announced in that case that "the general doctrine is that if the intent of the Constitution be substantially responded to in this part of the indictment, a literal transcript of the formula is not essential.   It is further held that if the formula be present, other words, not perverting the meaning, will be treated as surplusage."   In that case the same objection was urged against the indictment as was insisted upon in State v. Schloss, supra, that there was added to the conclusion prescribed by the Constitution "and contrary to the form of the statute in such cases made and provided by the State."   It is manifest that the concluding words prescribed by the Constitution were embraced in the conclusion to the indictment in that case, therefore it was very properly held that the conclusion was sufficient.

Mr. Bishop, in his work, New Criminal Procedure (4 Ed.), vol. 1, sec. 651, after stating the ruling of some of the courts upon the proposition now under consideration, reached this conclusion.   He says: "Derivable from all, and from the analogies of the law, would seem to be that unimportant words omitted from the constitutional form of the conclusion, or changed therein, will not necessarily vitiate it; but whatever alters the substance, even in what seems unimportant, will render it void."

In Lemons v. State, 4 W. Va. 755, the conclusion of the indictment was "against the peace and dignity

of the State of W. Virginia." The Constitution of that
State provided, at the time the indictment in the case
was returned, that all indictments should conclude
"against the peace and dignity of the State of West
Virginia." It was held in that case that the abbre-
viation for the term "West" with the letter "W" be-
fore Virginia was not a compliance with the provisions
of the Constitution and the indictment was held insuffi-
cient. This case is cited with approval by Mr. Bishop
in his Criminal Procedure, and is also cited in State
v. Waters, supra, and Judge Lewis in that case in no
way disapproves of the West Virginia case. He sim-
ply concluded his review of the Lemons case by stating
that "this was no case of surplusage; it was the rejec-
tion of a name given by the Constitution and the adop-
tion of a different one." Subsequent to the announce-
ment of the conclusion reached by the Supreme Court
of Appeals of West Virginia in the Lemons case, here-
tofore cited, the Constitution was changed respecting
the concluding terms of all indictments, and instead of
requiring the conclusion "against the peace and dig-
nity of the State of West Virginia," the same con-
clusion was required as in this State, that is, "against
the peace and dignity of the State," and in State v.
Allen, 8 W. Va. 680, the conclusion to the indictment
conformed to the requirements of the former Consti-
tution and concluded in the terms "against the peace
and dignity of the State of West Virginia," instead of
concluding "against the peace and dignity of the
State," as required by the Constitution then in force.
That case, in harmony with the rule announced by this
court, correctly held that the terms of the conclusion
as prescribed by the Constitution being embraced in
the language used, the mere addition of the State of
West Virginia would not vitiate the indictment. The
Lemons case was referred to approvingly, but distin-
guished from the Allen case.

It may be said as to the case of Lemons v. State, supra, that from the language used by the learned judge rendering the opinion, it is susceptible of being interpreted as not being in perfect harmony with many other of the appellate courts, by reason of its requiring a too strict and literal compliance with the terms used in the Constitution; however, by the subsequent case of State v. Allen, supra, it is clearly indicated that the Virginia court is in harmony with the uniform rulings of nearly all the appellate courts.

The Constitution of Wisconsin contains a similar provision to the Constitution of this State and provides that all indictments shall conclude "against the peace and dignity of the State." In Williams v. State, 27 Wis. 402, the indictment in judgment before the court concluded "against the peace of the State of Wisconsin." In discussing the terms of the conclusion of the indictment in that case, Lyon, J., speaking for the Supreme Court of Wisconsin, thus treats the proposition. He said: "Art. VII., sec. 17, of the Constitution provides, that 'all indictments shall conclude against the peace and dignity of the State.' This mandate is imperative, and an indictment which does not so conclude is necessarily bad. The courts have no authority to dispense with that which the Constitution requires. The Constitutions of Virginia, Texas and Missouri contain the same provision, and it has been held by the Supreme Court of the two latter States, and by the Court of Appeals of the former, that the conclusion required by the Constitution is indispensable to the validity of the indictment," citing Com. v. Carney, 4 Gratt. 546; State v. Durst, 7 Tex. 74; State v. Lopez, 19 Mo. 254.

This brings us to the consideration of the two Texas cases in which the identical proposition involved in this case was in judgment before the Texas Court of Appeals in the cases of Wallace Thompson v. State,

15 Tex. App. 39, and in R. Thompson v. State, reported in the same volume by the same court, page 168. Section 12 of article 5 of the Constitution of Texas, at the time of the announcement of the decision in those two cases, made the same requirement as to the conclusion of all prosecutions, that is, that they should conclude "against the peace and dignity of the State." In those cases the definite article "the" which should immediately precede the word "State," was omitted, and it was expressly ruled by that court that in the omission of the word "the," as above indicated, there was a failure to comply with the requirement of the Constitution; that the conclusion in all prosecutions should be "against the peace and dignity of the State." It is not inappropriate to say that the Texas Court of Appeals above cited has long been recognized by both the bench and bar as one of high standing, and while the propositions involved in those two cases are not discussed at any length, yet from the recognized ability of the eminent lawyers constituting that court, the conclusion reached doubtless was not without due and proper consideration. This is indicated in the latter case of R. Thompson v. State, above referred to. In that case the court had reached the conclusion that the judgment of the trial court was right and had entered its order affirming the judgment, but the same fatal defect in the conclusion of the information by the omission of the definite article "the" immediately preceding "State" having been overlooked, a motion for rehearing was granted and the judgment of the trial court reversed. It is obvious that the same proposition being presented in both cases and one in which the judgment of the trial court had been affirmed, that the court fully recognized the importance of the proposition, and while the expression of their conclusions was brief, the consideration of the question was full and thorough.

Emphasizing the correctness of the conclusion reached in the two cases last cited by the Texas Court of Appeals, the learned author, Mr. Bishop, in support of the rule heretofore announced, that the omission of unimportant words from the constitutional form of the conclusion would not necessarily vitiate an indictment or information, but whatever alters the substance, even in what seems unimportant, will render it void, directs the bench and bar to consult the cases of Thompson v. State, 15 Tex. App. on pages 39 and 168.

In 10 Am. and Eng. Ency. Law (1 Ed.), 514, we also find in the text that where the Constitution of the State requires that all prosecutions shall conclude "against the peace and dignity of the State," the omission of the word "the" before "State," in an information, is fatal to it, citing in support of the text the cases heretofore indicated, in the 15th Tex. App. at pages 39 and 168.

We have thus pointed out the views of the numerous appellate courts applicable to this question, and we are now simply confronted with the proposition as to whether or not, measured by the authorities as heretofore indicated, the conclusion to the indictment in the case at bar sufficiently conforms to the requirements of the Constitution of this State. In responding to this proposition we deem it sufficient to say that, after a careful and thorough consideration of all the authorities applicable to the subject now under discussion, we see no escape from holding that the conclusion to the indictment in this cause fails to comply with the imperative mandate of the Constitution of this State. As heretofore pointed out, the authorities are all in harmony that the conclusion to the indictment must substantially conform to the requirements of the Constitution, and in all cases where this proposition has been in judgment before the appellate

courts, where the language used was not identical with the terms prescribed by the Constitution, it is significant that the courts have uniformly pointed out that the terms used were equivalent and in effect and substance embraced the conclusion required by the Constitution, and, as said by the court of appeals in State v. Waters, supra, the conclusion prescribed by the Constitution is for the purpose of indicating the power or authority against which the facts charged constitute an offense. This being true, it is plainly manifest that, the definite article "the" which should immediately precede the word "State" being omitted, the conclusion to the indictment in the case at bar falls far short of indicating the power or authority against which the facts charged in the body of the indictment constitute an offense.

While it may be conceded that the word "the" is a small one and in many instances of little importance; however, if we are to longer recognize rules in the proper interpretation of language, then we see no escape from the conclusion that the definite article "the" preceding the word "State" is absolutely essential in order to designate the particular State against which the offense is charged to have been committed. It is clear that the omission of this word not only changes the sense but the very substance of the clause, and, as was said by Mr. Bishop in the discussion of the proposition of the conclusion prescribed by the Constitution, "Whatever alters the substance, even in what seems unimportant, will render it void." While it may be said that the definite article "the" in many instances is an unimportant phrase, yet as applicable to the conclusion prescribed by the Constitution of this State, it is full of force and vitality. As was said by the learned counsel in their brief in State v. Skillman, 209 Mo. 408, decided at the present term of this court, "the article 'the' directs what

particular thing or things we are to take or assume as spoken of. It determines what particular thing is meant; that is, what particular thing we are to assume to be meant. It is used before nouns with a specifying or particularizing effect.'' In the use of the definite article "the" immediately preceding "State" in the conclusion prescribed by the Constitution we have pointed out the State whose peace and dignity has been offended, and by the omission of such definite article we have a conclusion that does not designate the power or authority against which the offense is committed. "The State," in the conclusion prescribed by the Constitution of this State, means the State of Missouri, and this in substance was what was decided in the Hays case, 78 Mo. 600, heretofore cited.

If this conclusion embraced language similar to that pointed out in the cases to which we have heretofore referred, such as "against the peace and dignity of our said State," or "against the peace and dignity of State of Missouri," it might be very properly ruled that such language was at least equivalent to the language prescribed by the Constitution, for the reason that it indicated the power and authority against which the offense as charged in the body of the indictment constitutes an offense.

This case falls far short of conforming to or meeting the requirements of the rule announced by Judge Lewis in State v. Waters, supra. It was there said: "If the intent of the Constitution be responded to in this part of the indictment, a literal transcript of the formula is not essential." But in that same case it will be observed that the learned judge said that the purpose and meaning of the conclusion was to indicate the power or authority against which the facts charged constitute an offense. Therefore it is obvious that the intent of the Constitution has not been substantially responded to for the reasons here-

210. Sup—15

tofore suggested; that in the omission of the definite article "the" preceding "State" there is an absolute failure to indicate the power or authority against which the offense is charged to have been committed.

It is not a satisfactory solution of this proposition to say we know what was intended or meant by the conclusion in the case at bar, or that it was a mere matter of form. The proposition confronting us is not what the pleader meant to say, but what did he say, and do the terms used in concluding the indictment in this case substantially conform to the requirements prescribed by the Constitution? Constitutional requirements are not ordinarily to be regarded as mere matters of form. As was said in Cox v. State, 8 Tex. 1. c. 306: "However much we may feel disposed to consider a matter prescribed by the Constitution ill-advised or useless—however much we may be inclined to doubt the propriety of inserting into the organic, fundamental law of the State requisites of forms with regard to procedure and practice in the courts,—the answer is, the people themselves, the source of all power and authority in a republican government, have spoken it; and with regard to their *ipse dixit,* when contained in the Constitution, which is but the expression of their sovereign will, the courts can only bow in humble obedience, and say, '*ita est scripta.*' If plain and unambiguous, no ordinary rules of construction are applicable to these expressions; their inherent, binding authority is superior to all ordinary rules."

Mr. Justice EMOTT in People v. Lawrence, 36 Barb. 1. c. 186, in discussing a constitutional question, used this language: "It will be found, upon full consideration, to be difficult to treat any constitutional provision as merely directory and not imperative." This language was fully approved by Judge COOLEY. [Cooley's Const. Lim. (3 Ed.), 82.]

State v. Campbell.

In Rice v. State, 3 Heisk. 1. c. 220, it was clearly as well as forcibly announced that "an indictment that does not conclude 'against the peace and dignity of the State' is a nullity. It is a positive injunction of the Constitution itself that such shall be the conclusion of every indictment. It is, therefore, a matter that cannot be affected by legislation, and a defect that cannot be ignored by the courts. An indictment without these words is not an accusation of crime, and not an indictment in the sense of the Constitution. No conviction upon such an indictment could be permitted to stand, and a prisoner cannot waive his rights in this respect, as it is the imperative mandate of the Constitution that all crimes shall be prosecuted by presentment or indictment, and that all indictments shall conclude 'against the peace and dignity of the State.' The conclusion 'against the peace and dignity of the State' cannot be dispensed with." [1 Green's Cr. Rep. 266.] The same doctrine is emphatically declared in Thompson v. Commonwealth, 20 Gratt, 724, and Carney's Case, 4 Gratt. 546.

In Nichols v. State, 35 Wis. 308, the court, treating the subject of the conclusion prescribed by the Constitution, said: "This formula is a mere rhetorical flourish, adding nothing to the substance of the indictment, and it is difficult to see why the mandate for its use was inserted in the Constitution. Yet it is there, and must be obeyed. We enforced obedience to it in Williams v. State, 27 Wis. 402. Of course, the accused cannot be possibly prejudiced or in any manner misled by the omission of the formula from an indictment, and the use of it is held necessary for the sole reason that the Constitution ordains that it shall be used."

In our opinion the conclusion prescribed by the Constitution of this State is not only one of form, but as well one of substance: "substance, because the Con-

stitution requires it;" and, as was said by Mr. Bishop in the announcement of the rule, "whatever alters the substance, even in what seems unimportant, will render it void." Our conclusion upon this proposition is that the indictment in this cause fails to substantially comply in its conclusion with the terms prescribed by the Constitution, and therefore should be held invalid.

## II.

Many other errors are assigned in the record as a basis for the reversal of this judgment; however, the difficulty of discussing legal propositions is apparent after reaching the conclusion that there is no valid charge pending to which the propositions are applicable. But as this case will doubtless be retried upon a new presentment of the charge contained in the indictment, it perhaps is well to indicate briefly and in a general way our views upon some of the propositions discussed.

It is earnestly insisted by learned counsel that the instructions as given by the court were erroneous and that there was reversible error committed in the refusal of instructions requested by the appellant. It is sufficient to state upon this proposition that there were thirteen instructions requested by the appellant, all of which were refused. There were twelve given by the court in submitting this cause to the jury. We deem it unnecessary, in view of the fact that it is a mere surmise as to what the testimony will be upon the next trial, to review the instructions refused by the court or those given by it, but shall be content with simply saying that the law as applicable to the offense charged in this indictment is well settled and the reports of this court abundantly abound with correct precedents of declarations of law applicable to the facts of this case, and it is a safe rule to

State v. Campbell.

follow "the beaten path" and make use of such precedents where they can properly be made applicable to the facts.   It is well settled that where the court by its instructions correctly and fully covers every phase of the case to which the testimony is applicable, it is not error to refuse instructions requested by the defendant.   [State v. Franke, 159 Mo. 535; State v. Nelson, 166 Mo. 191.]

Another well-settled rule applicable to the subject of instructions by the court is that instructions upon any subject should not be given in the absence of evidence upon which to base them.

Complaint is made by counsel for appellant in this case of the court's direction to the jury wherein it was said that offers to prove certain alleged facts which may have been made in your presence are not evidence and you should not take the same into consideration or allow yourself to be in any manner influenced thereby, for the reason that there were no offers made to prove certain facts and therefore there was no basis upon which to predicate the instruction. It is sufficient to say of that complaint, what has heretofore been suggested, that instructions should not be given unless predicated upon the existence of certain facts to which the instructions relate, or upon substantial testimony tending to establish such facts.

Instruction number 11, given by the court, as disclosed by the record, is manifestly erroneous, and but for the fact that the appellant requested a similar instruction, in our opinion it would constitute reversible error.   This instruction is as follows:

"The court instructs the jury that whilst it is the duty of the State to establish, beyond the purview of all reasonable doubt, the guilt of the defendant of the crime charged in the indictment, it is not incumbent on the defendant to prove his innocence, and though the testimony on behalf of the defendant

falls short of proving his innocence, and although you may disbelieve all the evidence offered in behalf of the defendant, yet if at the close of the case the evidence offered leaves a reasonable doubt in the minds of the jury, they are bound to acquit the defendant, even if they believe he himself, any or all of the witnesses introduced in his behalf, have sworn falsely.''

An analysis of that instruction clearly discloses its objectionable features. It is erroneous, first, because it is a comment upon the evidence; secondly, it strongly partakes of an argument, which alone is the province of counsel on either side to present to the jury.

Instruction number 6, the correctness of which is challenged by counsel for appellant, has repeatedly met the approval of this court, and where statements are made by the defendant, upon which this instruction may be predicated, there is no error in giving it.

It is earnestly insisted that the court erred in giving instruction number 9, which was applicable to the defense of an *alibi*. It is argued that this instruction was calculated to mislead the jury and prevent a fair and proper consideration of the proposition that no offense at all was committed, or in other words that the prosecuting witness was not ravished. We are unable to agree to this insistence. An analysis of instruction number 9 will demonstrate that it by no means assumes that the person of the prosecuting witness was violated, but it predicates the declaration of law upon the testimony as given by the defendant and one of his witnesses, that if he was not present, not at the time and place the offense was committed, but at the time and place it is alleged that it was committed. No intelligent juror could be misled by that instruction, for at the very beginning of the court's directions to the jury the question is pre-

sented as to whether or not an offense was committed, and then follows the instruction upon appellant's defense of an *alibi*, which had sufficient testimony upon which to base it. It simply in effect told the jury that if they believed and found from the evidence that the defendant was not present at the time and place of the alleged rape of the prosecuting witness, or if they entertained a reasonable doubt as to his presence, then they would acquit him. Under the testimony as introduced by the defendant it was the plain duty of the court to give that instruction. It was in proper form and has frequently met the approval of this court.

We deem it unnecessary to further discuss the instructions of the court as disclosed from the record in this cause. It is sufficient to simply repeat what has heretofore been suggested, that the law upon the questions involved in this proceeding is very well settled in this State, and there ought not to be any difficulty, where there is testimony upon which to predicate the instructions, to fully cover every phase of the case in harmony with declarations of law which have repeatedly met the approval of this court.

### III.

Complaint of error committed by the trial court is disclosed by the record upon its action in overruling the motion to quash the panel of jurors. It will suffice to say upon this proposition that learned counsel for appellant nowhere indicate in what way the rights of the defendant were prejudiced by reason of the manner of selecting and impaneling the jury, and it is only necessary to add that the panel of jurors should be drawn in accordance with the commands of the statute, and the statute nowhere requires the court in selecting the panel of jurors to make such selection in equal numbers from the two political parties. The

qualifications of the jurors to be selected are prescribed by the statute, and the manner and method of selecting such jurors should be limited and confined to the requirements of such statute providing for their selection.

## IV.

Complaint of error is urged at the action of the court in permitting the prosecuting attorney in his opening statement to the jury to read the affidavit as made by the prosecuting witness before the justice of the peace. It is only necessary to say that in the prosecution in the trial court this affidavit did not form the basis of the prosecution. Doubtless the prosecuting attorney read to the jury the indictment preferred by the grand jury, and if this affidavit was competent evidence the appropriate time to read it to the jury was when it was introduced in evidence; however, this complaint in another trial can be avoided by the prosecuting officer omitting from his statement the reading of such affidavit.

## V.

It is also insisted that the court committed error in permitting the prosecutrix to testify over defendant's objection to what was said to her by the defendant at the spring in August, 1905, and to further testify that she reported such conversation to defendant's wife in his absence. The testimony complained of was as follows: "Q. Where were you, tell the jury all about it? A. We was down at the spring to haul a barrel of water; I had told his wife I had been getting lonesome, and she told him; so when we went to haul the barrel of water he asked me why it was I was getting lonesome; if it was because I couldn't be with him, and I said no, it wasn't. That's all I said, and all he said."

The law is well settled upon this proposition that the State may prove improper acts and solicitations to sexual intercourse by the accused towards the prosecutrix prior to the rape charged, in order to show his probable motive. [Underhill on Criminal Evidence, sec. 415.]

It has also been held competent for the State to prove prior assaults by the defendant upon the prosecutrix for the purpose of proving the intent. [State v. Patrick, 107 Mo. 1. c. 155; People v. O'Sullivan, 104 N. Y. 481.]

We are of the opinion that this isolated conversation entirely disconnected with the assault as testified to by the prosecutrix was not of that nature and character which would classify it as improper acts or solicitations to sexual intercourse so as to make it admissible in evidence. It should properly be classified as an impudent and uncalled for remark. However, it may be said, as is contended by the learned Attorney-General, that if it was not competent then neither the conversation itself nor the evidence that the prosecutrix reported the fact to the wife of the defendant could have prejudiced the defendant, and therefore would not constitute reversible error. If there was nothing more said or done than is testified to by the prosecutrix at the spring, then we take it that it ought not to be admitted. It did not tend to prove any material fact and is simply calculated to have the jury indulge in mere suspicions as to what was meant.

## VI.

It is also insisted that the court erred in the admission of the testimony as given by Mrs. Garton and Dr. Carter. We have carefully considered the testimony of these two witnesses and in our opinion their testimony was competent and admissible.

## VII.

It is further earnestly insisted that the court erred in admitting in evidence the conversation between the defendant and prosecutrix at the home of the justice of the peace. It is sufficient to say upon this contention that if upon another trial upon this charge a conversation between the prosecutrix and the defendant should be introduced, if such conversation tends to prove any of the material issues involved in the proceeding, or has a tendency to prove any admission on the part of the defendant, or in any way incriminate him, then it would be competent; but on the other hand, if this conversation amounts simply to a wordy controversy between the prosecutrix and the defendant, one asserting his guilt and the other denying it, using such expression as was used by the prosecutrix, "You look like you had been run through a threshing machine," and such language as used by the defendant, that "this is another of your fishy stories," then this conversation would have no tendency to prove or disprove any of the issues in this cause and is inadmissible and should be excluded.

## VIII.

This brings us to the final contention of the appellant, that the testimony disclosed by the record is insufficient to support the verdict of the jury. We again repeat that it is difficult to surmise what the testimony in the next trial of this case will be; however, we have no hesitation in saying that the testimony as disclosed by the record in this cause was amply sufficient to warrant the court in submitting the question to the jury, and a conviction predicated upon that testimony, where the case was fully covered by appropriate directions to the jury, would not be interfered with by this court.

We have herein given expression to our views upon the propositions involved in this cause, which results in the conclusion that the judgment of the trial court should be reversed and the cause remanded, to the end that such further orders may be made concerning this cause, touching a new charge, as the court may deem proper, in accordance with the provisions of the statute. It is so ordered.

All concur.